IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KENNETH E. DACUS                                                                          PLAINTIFF

V.                                         4:06CV1299 JMM

THE BOARD OF TRUSTEES OF
THE UNIVERSITY OF ARKANSAS,
A Body Politic and Corporate                                                          DEFENDANT

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending is the Defendant's Motion for Summary Judgment. Plaintiff has responded to the motion and the Defendant has replied. For the reasons set forth below, the Motion is GRANTED.

### Facts

Plaintiff Kenneth Dacus, a forty-five year old Caucasian male, began his employment with the University of Arkansas for Medical Sciences (the "Defendant") on October 22, 2002, as a Stationary Engineer in the Defendant's power plant.

On August 4, 2003, Plaintiff and a co-worker were involved in a conflict. Plaintiff was issued a verbal disciplinary warning for the incident. On September 10, 2003, Plaintiff was issued a written disciplinary warning for being seen at the hospital canteen, out of his work area, during work hours. Plaintiff filed grievances regarding each of these disciplinary actions. After review of the incidents, the decision was made to remove the oral warning of August from Plaintiff's file. "It was determined that Mr. Dacus made every attempt to avoid a confrontation with Mr. Riley, and therefore the action was not appropriate." (Pl.'s Ex. E). Plaintiff's September 2003 written warning was upheld. However, the discipline action was changed to an "oral" warning.

On September 30, 2003, Plaintiff allegedly overheard Michael McDonald, a painting supervisor at the power plant, make the statement that he was "going to get that fucking nigger" in reference to an African American employee named Bobby Tillman. Approximately eight months later on June 12, 2004, Plaintiff contacted Michael Barnwell, supervisor over the power plant, and informed him about McDonald's derogatory statement.

Plaintiff claims that after his report to Barnwell he was the target of retaliation. On July 30, 2004, Plaintiff received a written disciplinary warning for making an inappropriate comment to a co-worker. As a result of Plaintiff's grievance, the disciplinary warning was cancelled and removed from Plaintiff's file. "After additional investigation it was determined that the action was not appropriate for the situation." (Pl.'s Ex. E).

On August 11, 2004, Plaintiff was issued a written disciplinary notice by Michael Barnwell for failing to complete a "safety PM." (Pl.'s Ex. B-2). Barnwell recommended at this time that Plaintiff be terminated for the violation. Plaintiff filed a grievance regarding the termination, and the recommendation was overturned.

On June 23, 2005, Plaintiff drafted a letter to Governor Huckabee outlining his "situation" and stating that his civil rights were being violated. He claimed he had been placed in a "hostile work environment" and was in constant fear of losing his job. He asked Governor Huckabee to investigate the matters further.

On September 28, 2005, Plaintiff was issued an oral disciplinary warning from Physical Plant Assistant Director Marlon Joiner for failing to complete his "assigned work." (Def.'s Ex. 1).

On November 2, 2005, Plaintiff sent a letter to the President of the University of Arkansas, Dr. B. Alan Sugg. In this letter, Plaintiff stated that he had "stood up to

discrimination" and had since been "harassed and intimidated." (Pl.'s Ex. F). Plaintiff stated, "I am wanting a [sic] answer from you. What are you going to do and I am also requesting a meeting with the Board of Trustees." Id. Dr. Sugg responded to Plaintiff by letter dated November 9, 2005 stating that he had asked his Associate General Counsel to review the situation. The letter recited various complaints made by Plaintiff during his employment with the Defendant and the resolution of each complaint. Dr. Sugg closed by stating that his Counsel had concluded that the "campus has and continues to address your complaints you have raised in an appropriate manner." (Pl.'s Ex. G).

On November 9, 2005, Plaintiff received a written disciplinary warning from Marlon Joiner. The Notice stated that "[g]iven multiple oppertunities [sic], Mr. Dacus still fails to follow simple instructions 1) given in shop meeting, 2) orders face to face." (Def.'s Ex. 2).

Approximately, one week later, Plaintiff received a second written warning from Marlon Joiner. Joiner claimed that Plaintiff put the chiller in manual operator mode and commanded the chiller offline. Allegedly Plaintiff took this action after he had been specifically instructed by Joiner to leave the chiller in automatic mode. The Notice warns, "This is the third time that you have failed to follow my instructions in the past couple of months. If you continue to be unwilling or unable to follow my instruction, the next disciplinary action may result in your termination." (Def.'s Ex. 4).

On January 4, 2006, Plaintiff received a third written disciplinary warning from Joiner and was terminated. According to Joiner, "After painting a set of steps in the Power Plant, Mr. Dacus painted his name on an adjacent support beam." (Def.'s Ex. 4). UAMS Administrative Guide 4.4.02 states: "Issuance of a third notice (second written notice) for the same or related infraction may be grounds for immediate dismissal without notice. Cause for dismissal may

exist if, within a 12 month period, the problem continues after the issuance of a related oral and written notice, or after the issuance of three unrelated written notices." (Def's Ex. A).

Plaintiff filed a Charge of Discrimination with the EEOC on March 28, 2006 claiming he had been discriminated against on the basis of his race and in retaliation. (Ex. A to Pl's Complaint). In the Charge, Plaintiff stated that he had been harassed by the Physical Plant Assistant Director and coworkers and that, although he had reported the harassment, it was allowed to continue. Plaintiff cited specifically the disciplinaries issued on September 28, 2005, November 2, 2005, November 15, 2005, and his termination on January 4, 2006. Id. Plaintiff filed suit in this Court on September 18, 2006 for violation of his civil rights under Title VII, Section 1983 and for declaratory relief pursuant to 28 U.S.C. § 2201. Plaintiff has abandoned his charge of race discrimination but seeks declaratory judgment and damages resulting from retaliation.

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### Discussion of the Law

Defendant contends that summary judgment should be granted in this case because Plaintiff has failed to exhaust his administrative remedies, Plaintiff has failed to set forth a prima facie case of retaliation or, in the alternative, Defendant has set forth a legitimate reason for Plaintiff's termination which Plaintiff cannot prove is pretextual.

In a retaliation claim, the Plaintiff bears the burden of establishing a prima facie case. To establish such a claim, Plaintiff must show: 1) he engaged in protected conduct; 2) a reasonable employee would have found the challenged retaliatory action materially adverse; and 3) the materially adverse action was causally linked to the protected conduct. *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *cf. Singletary v. Mo. Dept. of Corrections*, 423 F.3d 886, 892 (8th Cir.2005) (articulating old standard where, to satisfy the

second prong, the plaintiff was required to show he suffered an adverse employment action). "The defense may rebut a plaintiff's claim by advancing a legitimate, 'non-retaliatory reason for the adverse employment action.'" *Gilooly v. Mo. Dept of Health and Senior Services*, 421 F.3d 734, 739 (8th Cir. 2005). "If the defendant can show a legitimate reason, the plaintiff must show that the given reason was only a pretext for discrimination." *Id.*

There is no dispute that Plaintiff engaged in protected conduct. Plaintiff was also subjected to disciplinary actions and termination after the protected conduct. Therefore, the second prong is also not an issue here. The real issue in this case is whether the adverse action was causally linked to Plaintiff's protected conduct. He has not provided any evidence to support his contention that he was disciplined and terminated because of his statement to Mr. Barnwell that he overheard a supervisor call another employee a derogatory name or because of his letters to Governor Huckabee and Dr. Sugg.

Although temporal proximity can create an inference of causation, the timeline in this case does not support such an inference. "Evidence of an employer's concerns about an employee's performance before the employee's protected activity undercuts a finding of causation." *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 504 (8th Cir. 2005). And "post-hoc complaints did not without more raise a retaliation bar to the proposed discipline because 'the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.' Indeed, complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy." *Carrington v. City of Des Moines, Iowa,* 481 F.3d 1046, 1051 (8th Cir. 2007)(quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir.2004). The evidence is clear that Plaintiff received disciplinary warnings *before* he engaged in any protect activity. He was disciplined on August

4, 2003 and September 10, 2003.  Although the August disciplinary warning was removed from his file, these warnings "reflect a continuation of the performance criticisms" raised by Defendant before Plaintiff's complaints.  *Kasper,* 425 F.3d at 504.  Therefore, the Court finds that Plaintiff has failed to establish an inference of causation and, thus, a prima facie case.

Moreover, Defendant has presented a legitimate, non-discriminatory reason for each of Plaintiff's disciplinary warnings and the eventual termination of his employment. The evidence unequivocally establishes Defendant disciplined Plaintiff for failing to follow instructions and that Defendant discharged Plaintiff because Plaintiff painted his name in orange paint on UAMS property.  None of the evidence Plaintiff presented sufficiently demonstrates retaliatory intent to establish Defendant's proffered reason for disciplining or discharging Plaintiff was pretext.  As the Eighth Circuit has explained, "[The court] will not second guess an employer's decision to discharge an employee who refuses to perform the essential functions of the employee's job. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995) (holding the federal courts do not sit as "super-personnel departments" that re-examine business decisions).

In conclusion, the Court finds that Plaintiff has failed to make a prima facie case of retaliation under Title VII.  For the same reasons, the Court finds that Plaintiff has also failed to present an enforceable claim under 42 U.S.C. § 1983 and 28 U.S.C. § 2201. Defendant's Motion for Summary Judgment (Docket # 8) is GRANTED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 19th day of June 2007.

*/s/ James M. Moody*
James M. Moody
United States District Judge